UNITED STATES, Appellee

v

EDWARD BERRY, Sergeant, and WILLIS M. MITCHELL, Corporal,
U. S. Army, Appellants

6 USCMA 609, 20 CMR 325

No. 6701

Decided January 27, 1956

██ 

*Myron G. Ehrlich, Esq.*, and *Captain Frank C. Stetson* argued the cause for Appellants, Accused. With him on the brief was *Lieutenant Colonel Joseph L. Chalk.*

*First Lieutenant Arnold I. Burns* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton, First Lieutenant Howard S. Marcu,* and *First Lieutenant Lewis W. Evans.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

This is an appeal by both accused from a conviction at a common trial of four specifications, in violation of Article 134, Uniform Code of Military Justice, 50 USC § 728. Two of the specifications allege the possession and use, respectively, of marihuana. The others set out separate acts of fornication committed in a hotel room in the presence of other persons. Two issues are presented for review: (1) The admissibility of evidence obtained by a search and seizure, and (2) whether a specification which alleges an act of sexual intercourse in a hotel room in the presence of other persons sufficiently states an offense in violation of the Uniform Code.

At about 11:00 p. m. on Wednesday, August 18, 1954, the accused met two girls, Brigitte Hoffmann and Ilse Jaeger, in a Berlin cafe. A half hour later the group left the cafe and proceeded to a hotel room occupied by the accused. Shortly after their arrival, Ilse asked for a cigarette. The accused had none. However, one of the accused took a small tobacco pouch from a closet in the room. The accused also produced cigarette paper. Using the contents of the pouch, the four rolled cigarettes. The accused instructed the girls on the method of rolling them. The accused also showed the girls how to smoke the cigarettes in a "funny" way. All of them smoked a number of the cigarettes, which had a "peculiar taste and . . . peculiar smell." At first, Ilse felt "a little sick," then she became "wild—temperamental." At her suggestion, they went to bed.

Each accused had sexual intercourse with a girl. The next morning, the accused exchanged girls and engaged in further sexual relations and cigarette smoking. In the late afternoon, the group left the hotel and returned to the cafe where they had met. There, they parted company.

On Saturday, August 21, Ilse went to the Criminal Investigations Office. Since the evening of August 19 she had had "spasms of the heart." She reported the incident in the hotel. On the basis of her statement, Agent Kochery of the Criminal Investigation Detachment and Neumann, a German criminal policeman, assigned to Koch-

ery's detachment, went to the hotel. They met the accused, and conducted a search of their hotel room. In the course of the search, Kochery seized a black leather tobacco pouch. Subsequent chemical and microscopic analysis disclosed that green vegetable matter in the pouch was marihuana. At the trial, the pouch and the contents were identified by Ilse and Brigitte as the "same" or "like" those they had seen and used.

The Government and the accused tacitly agree, that notwithstanding the presence of a German policeman, the legality of the search and seizure must be determined by American law. See: United States v DeLeo, 5 USCMA 148, 17 CMR 148. Moreover, the Government does not dispute the █ standing of both accused to contest the legality of the search. There is some evidence to indicate that the room was registered in only one name. However, since it appears that both accused occupied the room, the Government's implied concession is justified. Driskill v United States, 281 Fed 146 (CA 9th Cir) (1922).

Both accused testified as to the circumstances surrounding the search and seizure. Their testimony indicates that Mitchell affirmatively objected to the search. However, the testimony of the law enforcement officers is contradictory. Agent Kochery testified that before the search, he identified himself as a Criminal Investigation Detachment agent and displayed his credentials. He asked for and examined Mitchell's identification papers. When Berry entered the room he also checked his papers. Then addressing himself to Mitchell, he asked if he could "search and look around the room." Mitchell replied, "Sure, go right ahead." On two other occasions in the course of the search, Agent Kochery made the same request and received the same answer from Mitchell. The German policeman also testified. He stated that he entered the room with Kochery. He posted himself at the door. Before searching the room Kochery asked, "May I look around" and Mitchell told him to "Go ahead, please"; at the same time he extended

his arm in invitation. Neumann especially noted the form of the request because it was "different" from the German procedure; "it is not usual in the German police—if we have to make a search then we say we have to make a search, and so there was a difference between the German and the English." As a result of the search, the pouch was discovered and seized.

Over the accused's objection, the law officer admitted the evidence. He gave no reasons. Later, however, at the request of both trial and defense counsel, he submitted the question of consent to the court members for consideration in their deliberations on the findings. He gave the court the following instructions:

"Consent by an accused to a search is not to be lightly implied merely because he peaceably submits either to what he believes to be a lawful search or to a show of authority. Peaceable submission by an accused believing that an agent has the authority to make the search does not waive the accused's constitutional rights in regard to an illegal search. It is incumbent upon the Government to show a consent that is unequivocal and specific, freely and intelligently given. Consent, therefore, must be proved by clear and positive testimony and it must be established that there was no duress or coercion, actual or implied. If you do not find that such a waiver of the accused's constitutional rights was present in this case you must acquit both of the accused of Specifications 1 and 2 of the respective Charges against them.

"Now we further instruct that a search is prima facie assumed to have been properly undertaken and if a search is alleged to have been illegal it is incumbent upon the party alleging such illegality to establish such claim with the burden of proof. The burden of proof is not met by a mere assertion of illegality. A search made with the consent of the person whose property is searched is not unlawful."

Defense counsel called the law officer's attention to the "conflict" in the instructions regarding "the burden and . . .

the legality of the search." He asked if the law officer wished "to clear that up," but the latter ruled that he would let the instructions "stand."

Apparently the law officer misunderstood our decision in United States v Ornelas, 2 USCMA 96, 6 CMR 96, and in United States v Richardson, 1 USCMA 558, 4 CMR 150. In both of those cases we were concerned with disputed questions of fact regarding a matter which would bar or be a complete defense to the prosecution. A matter of that kind should "properly be considered by the court in connection with its determination of the accused's guilt or innocence." Manual for Courts-Martial, United States, 1951, paragraph 67e. Here, the issue was one of determining the admissibility of evidence. That question is interlocutory in nature, and unless otherwise provided by law, its determination rests with the law officer. Article 51(b), Uniform Code of Military Justice, 50 USC § 626; United States v Dykes, 5 USCMA 735, 19 CMR 31; United States v Stewart, 1 USCMA 648, 650, 5 CMR 76. No special rule of law applies in regard to the admission of evidence obtained as the result of a search. Consequently, the law officer's ruling in that regard is final. United States v Wilcher, 4 USCMA 215, 15 CMR 215; United States v Dupree, 1 USCMA 665, 5 CMR 93. Thus, the law officer erred in submitting the issue to the court-martial. Inasmuch as the error benefited the accused, he cannot properly complain. United States v Higgins, 6 USCMA 308, 20 CMR 24.

However, the law officer's instructions are important from a different point of view. They plainly indicate his confusion as to which party had the burden of establishing a proper predicate for the admissibility of the evidence obtained as a result of the search. In United States v Wilcher, supra, we pointed out that evidence obtained as a result of a search and seizure is admissible if it clearly appears that the accused consented to the search. The burden of establishing consent is on the Government. Acquiescence or mere submission to authority is not equivalent to consent. Johnson v United States, 333 US 10, 92 L ed 436, 68 S Ct 367. Determination of whether one or the other circumstance is present necessarily depends upon evaluation of the evidence in each case; precedents are, at best, of doubtful value. United States v Wilcher, supra, page 217. Since the instructions were intended as guideposts for the court in deciding the unlawfulness of the search, we assume that the law officer's own ruling was made on the basis of the same principles. If, as noted in part of the instructions, he required the accused to establish affirmatively that they did not consent to the search, his standard was incorrect.

As a practical matter, perhaps a search may be presumed to be legal. Certainly, in the absence of objection or evidence as to the circumstances under which it was made, the results of the search are admissible. United States v Dupree, supra. Moreover, the basis of any presumption of legality of search is the broader principle that officers of the law are presumed to act properly in the performance of their duties. United States v Tobita, 3 USCMA 267, 12 CMR 23; United States v Taylor, 2 USCMA 389, 9 CMR 19. An accused, however, has a right to object to evidence obtained as the result of a search. It then becomes "the duty of the proper officials to justify the action taken." United States v Keleher, 2 F2d 934, 935 (CA DC Cir) (1924). If the justification is consent, the Government must establish it by "clear and positive testimony." Judd v United States, 190 F2d 649, 651 (CA DC Cir) (1951); United States v Wilcher, supra.

From the law officer's instructions, we are unable to determine what standard of admissibility he used. We do not know whether he presumed the legality of the search and required the accused to overcome the presumption by evidence of illegality, which would include such matters as a lack of probable cause and the absence of an authorization from competent authority; or, whether he correctly imposed upon the Government, the burden of showing an affirmative consent. Both standards

are set out indiscriminately. The result is confusion. And when viewed in the light of the sharp conflict in the evidence, the confusion is prejudicial to the accused. Certainly, there is a fair probability that the law officer used the wrong standard for his ruling. If he did, the evidence obtained as a result of the search was improperly admitted.

In our opinion, a conviction should not rest upon uncertainty and confusion concerning the correct principles of law applicable to a vital part of the case. In the interests of justice, therefore, we set aside the findings of guilty of specifications 1 and 2 of the Charge which, respectively, allege the possession and the use of narcotics.

Turning to the sufficiency of the specifications, the accused contend that sexual intercourse between █ unmarried persons *per se* is not a violation of the Uniform Code. United States v Hartman, 71 BR 111; United States v Prater, 5 BR–JC 221, 229. They concede, however, that aggravating circumstances may make the act an offense.

In United States v Snyder, 1 USCMA 423, 427, 4 CMR 15, we indicated that Article 134 is not intended "to regulate the wholly private moral conduct of an individual." We also noted that some military tribunals have held that "simple fornication" is not an offense in military law. This view accords generally with the English common law idea that the act was a punishable offense only when committed "openly and notoriously." 37 CJS, Fornication, § 2a, page 119; 1 Am Jur, Adultery, § 13, page 687. Also, it has been held that in the absence of statute, the same rule prevails in the United States. 37 CJS, supra. However, we need not decide whether these authorities correctly define military law. Suffice it that, in our opinion, the specifications allege aggravating circumstances sufficient to state an offense under Article 134.

The public nature of an act is not always determined by the place of occurrence. A private residence in which other persons are gathered may be regarded as a public place for the purpose of evaluating the character of conduct by one of the persons. This is particularly true when the act is of such a nature as to bring discredit upon the armed forces. United States v Lowe, 4 USCMA 654, 16 CMR 228. An act, therefore, may be "open and notorious" not merely because of the *locus,* but because of the actual presence of other persons. We doubt, for example, that any reasonable person would contend that an act of fornication committed in full and open view of twenty persons gathered in a private home is not so aggravated in nature as to constitute an offense under the Uniform Code. How many persons then need be present to make the act a public one? In our opinion, the act is "open and notorious," flagrant, and discrediting to the military service when the participants know that a third person is present.

To avoid the effect of the aggravating circumstances, the accused emphasize that the witnesses to each act were "themselves engaged in like acts, at the identical time." This argument is also novel. It implies that an offense is excusable because other persons are committing the same offense at the same time. The contention is patently untenable. In a situation of this kind we are concerned with the effect of the act on persons of average sensibilities and habits, not with its effect on individuals whose attitudes and habits are such as to make them insensible to the situation. See: Board of Health of Lyndhurst Tp. v United Cork Cos., 116 NJ Eq 4, 172 Atl 347, aff'd 117 NJ Eq 437, 176 Atl 142.

The findings of guilty of specifications 3 and 4 of the Charge are affirmed. The findings of guilty of specifications 1 and 2 are set aside. The case is returned to The Judge Advocate General. In his discretion, he may order a rehearing as to specifications 1 and 2 or dismiss them and return the case to the board of review for reassessment of an appropriate sentence on specifications 3 and 4.

Judge LATIMER concurs.