UNITED STATES, Appellee

V.

Kendall L. SIMS, Staff Sergeant
U.S. Army, Appellant

No. 01-0765

Crim. App. No. 9900641

_____

United States Court of Appeals for the Armed Forces

Argued February 26, 2002

Decided September 30, 2002

GIERKE, J., delivered the opinion of the Court, in which
EFFRON and BAKER, JJ., joined.  SULLIVAN, S.J., filed
an opinion concurring in the result.  CRAWFORD, C.J.,
filed a dissenting opinion.

Counsel

For Appellant:  Captain Sean S. Park (argued); Colonel Adele H.
   Odegard, Lieutenant Colonel E. Allen Chandler, Jr., and Major
   Imogene M. Jamison (on brief).

For Appellee:  Captain Susana E. Watkins (argued); Colonel Steven
   T. Salata and Major Paul T. Cygnarowicz (on brief).

Military Judge:  Keith H. Hodges


  **This opinion is subject to editorial correction before final publication.**

Judge GIERKE delivered the opinion of the Court.

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of making a false official statement, sodomy, and committing an indecent act, in violation of Articles 107, 125, and 134, Uniform Code of Military Justice, 10 USC §§ 907, 925, and 934, respectively. The adjudged and approved sentence provides for a bad-conduct discharge, confinement for 30 days, total forfeitures, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence without opinion.

This Court granted review of the following issue:

> WHETHER THE ARMY COURT OF CRIMINAL APPEALS ERRED IN AFFIRMING APPELLANT'S CONVICTION OF INDECENT ACTS (1) WHEN APPELLANT, WITH CONSENT, MOMENTARILY TOUCHED THE BREASTS OF A FEMALE WHO MERELY LIFTED HER SHIRT WITHOUT REMOVING IT AND (2) WHEN THE CONSENSUAL ACT OCCURRED IN THE PRIVACY OF APPELLANT'S OWN ROOM WITH NO THIRD PARTY PRESENT AND WITH THE DOOR CLOSED.

For the reasons set out below, we hold that appellant's guilty plea to committing an indecent act was improvident.

## Facts

The offenses arose when appellant hosted a party in his quarters in Riyadh, Saudi Arabia. The offenses of which he was found guilty were consensual sodomy (fellatio) with a young female soldier, Private First Class (PFC) AB, who attended the party; indecent acts by touching PFC AB's bared breasts; and falsely denying that he had taken a female into his bedroom during the party.

The parties stipulated to the facts underlying the pleas of guilty. The stipulated facts offered to support the plea of guilty to committing an indecent act are as follows:

2

> At approximately 2400 the accused approached PFC [AB] and asked her back to his bedroom. Both went to the bedroom accompanied by three other soldiers. Once back in his bedroom, the accused, PFC [AB], and the other three party attendees engaged in conversational pleasantries. Within minutes, PFC [AB] was left alone with the accused in his bedroom after the other three party attendees departed the bedroom.
>
> As soon as PFC [AB] was left alone with the accused, he asked her if she would show him one her breasts [sic]. PFC [AB] denied this request. The accused then asked if he could show them without the top [sic]. She lifted her shirt, and the accused stared at the breasts and began to lustfully fondle them with both hands . . . .
>
> The accused admits that his actions with PFC [AB] were, under the circumstances, indecent. The accused realizes that his conduct was to the prejudice of good order and discipline and service discrediting because it was irresponsible for a newly promoted Staff Sergeant to conduct himself in such a manner with a junior enlisted soldier who had been drinking alcohol supplied by the accused. The accused was also aware that she was probably violating a local order barring deployed soldiers from being alone in the sleeping quarters of soldiers of the opposite sex. Moreover, he knew, or at least believed, that there was a substantial risk that his activity could be discovered at any given time if someone had walked in on them.

During the plea inquiry, appellant told the military judge that there were about 40 people at his promotion party. There was music and dancing in one room and food in another room next to appellant's bedroom. Appellant did not share his bedroom with anyone else.

Appellant kept a supply of hard liquor in his bedroom because "there were a lot of people at the party and [he] didn't want to run out of liquor." He had also told the women present at the party that they could leave their purses and personal items in his bedroom.

Appellant invited three male soldiers and AB into his bedroom for "a private party" separate from the main party. They

stayed for five to ten minutes and each had two or three shots of hard liquor. A video showing female nudity was playing on a television in appellant's bedroom, but he did not know who put it in the video player.

The three male soldiers departed, leaving appellant alone with AB. Appellant and AB watched the video, talked, and had another drink. The door was closed but not locked. During the time that appellant and AB were alone in the bedroom, no one knocked on the door or came into the room. At this point in the plea inquiry, the military judge explained the requirement for "open and notorious" conduct as follows:

> Consensual sexual conduct ordinarily -- and in your case would ordinarily be -- not a criminal offense if done in private. However, it can constitute an indecent act if done in public. And "public" includes that there is a substantial risk that your conduct -- your activities could be viewed by another or it's reasonably likely that your conduct could be viewed by another.[1]

When the military judge asked, "Were people coming and going throughout the evening?," appellant responded, "Only the people I let into my room." However, he also told the military judge that "[i]t wouldn't be any problem" for one of the women to retrieve her purse without asking permission. Appellant admitted that there was nothing to prevent someone from coming into the room and observing his conduct.

---

[1] The military judge's explanation clearly shows that this case is not about victims' rights, as the dissent suggests. Appellant pleaded guilty to a consensual act. The alleged unlawfulness of the act was based on its public nature, not the co-actor's lack of consent.

Appellant told the military judge that he asked AB if he could touch her breasts.  AB lifted up her shirt, and appellant touched her breasts.

## Discussion

RCM 910(e), Manual for Courts-Martial, United States (2000 ed.),[2] provides: "The military judge shall not accept a plea of guilty without making such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea."  In order to establish an adequate factual predicate for a guilty plea, the military judge must elicit "factual circumstances as revealed by the accused himself [that] objectively support that plea[.]"  United States v. Davenport, 9 MJ 364, 367 (CMA 1980).  It is not enough to elicit legal conclusions.  The military judge must elicit facts to support the plea of guilty.  United State v. Outhier, 45 MJ 326, 331 (1996).

Appellant contends that his guilty plea was improvident because his act was not performed in an "open and notorious manner."  The Government contends that appellant's act was committed "openly and notoriously" because it was reasonably likely that others would see it, even though no one actually saw it.

"'Indecent' signifies that form of immorality relating to sexual impurity which is not only grossly vulgar, obscene, and repugnant to common propriety, but tends to excite lust and deprave the morals with respect to sexual relations."  Para. 90c,

_____

[2] All Manual provisions cited are identical to those in effect at the time of appellant's court-martial.

Part IV, Manual, supra.  An otherwise lawful sexual act may violate Article 134, supra, if it is committed "openly and notoriously."  United States v. Berry, 6 USCMA 609, 614, 20 CMR 325, 330 (1956).  An act is "open and notorious . . . when the participants know that a third person is present."  Id.

In United States v. Izquierdo, 51 MJ 421, 423 (1999), decided after appellant's court-martial, this Court held that the evidence was legally sufficient to support a conviction of committing an indecent act, where the accused had sexual intercourse with a woman in his barracks room while his two roommates were in the room, even though he blocked their view by hanging up a sheet "that substantially blocked his roommates' view of his side of the room."  In the same case, however, we held that the evidence was legally insufficient to prove an indecent act where the accused had sexual intercourse in a shared barracks room, with the door closed but unlocked and no one else present in the room.

Izquierdo was a contested case, but it is instructive and closely analogous to this case.  In Izquierdo, this Court tacitly approved the military judge's instruction that sexual acts are open and notorious when committed "in such a place and under such circumstances that it is reasonably likely to be seen by others even though others actually do not view the acts."  Id.; see United States v. Carr, 28 MJ 661, 664 (NMCMR 1989).  Izquierdo clarified the Berry definition ("when the participants know that a third person is present") by holding that it was not necessary to prove that a third person actually observed the act, but only that it was reasonably likely that a third person would observe

6

it.  However, we concluded that, even when viewed in the light most favorable to the prosecution, the evidence was legally insufficient to prove that the sexual act, committed in a shared barracks room with no third party present and with the door closed but unlocked, was open and notorious.

In this case, the sexual touching was committed in a private bedroom, with the door closed but unlocked.  This is a close case, because as in Izquierdo, there was a possibility that someone, in this case from the ongoing party, would enter through the closed but unlocked door and observe the sexual activity. However, this case is weaker than Izquierdo in two respects: (1) appellant was in his private bedroom, which gave him a greater expectation of privacy than a shared barracks room; and (2) neither party had disrobed.  The act in question could have been terminated easily and quickly.  Had anyone knocked, called out, or in any way signaled their entry into the room, AB could have quickly pulled her shirt down and covered herself.

We have noted appellant's stipulation that "there was a substantial risk that his activity could be discovered[.]"  In our view, appellant's conclusory stipulation, without any additional facts to distinguish this case from Izquierdo, is inadequate to establish a factual predicate for "open and notorious" sexual conduct.  See Outhier, supra.  Accordingly, there is a substantial basis for rejecting the plea as improvident, because appellant's responses and the stipulation of fact state only the conclusion that it was reasonably likely under these circumstances that appellant's act of touching PFC AB would have been seen by others, but they do not provide the

factual basis for that conclusion.[3] United States v. Prater, 32 MJ 433, 436 (CMA 1991).

We turn finally to the question of prejudice. Considering the nature of the remaining findings of guilty and the sentence adjudged at trial, we are satisfied that appellant was not prejudiced as to sentence, and "we perceive no reasonable possibility of benefit to [appellant] by remand of the record . . . for reassessment of the sentence." See United States v. Rushing, 11 MJ 95, 98 (CMA 1981).

### Decision

The decision of the United States Army Court of Criminal Appeals is reversed as to the finding of guilty of Specification 2 of Charge V. The finding of guilty of Specification 2 of Charge V is set aside, and that specification is dismissed. In all other respects, the decision is affirmed.

---

[3] Our decision does not establish a per se rule, as asserted by the dissent. We have applied well-established law providing that otherwise lawful sexual conduct is indecent if committed in public, and we have held, on a case-specific basis, that the factual predicate elicited from appellant in this case was inadequate to establish that his conduct was "public."

United States v. Sims, No. 01-0646/AF

SULLIVAN, Senior Judge (concurring in the result):

I agree with the result reached by the majority in this case, but not its rationale. The alleged indecent act of consensually fondling an adult female's (AB's) breasts was done behind the closed door of appellant's barracks room, and no third person was actually present. Under our case law at the time of appellant's trial, a consensual sexual act of this type by a servicemember in these circumstances did not constitute the crime of indecent acts because it was not "open and notorious." See United States v. Berry, 6 USCMA 609, 614 20 CMR 325, 330 (1956) (known presence of a third party required for otherwise lawful sexual intercourse to be considered an indecent act). The military judge obviously ignored Berry and erred by applying a "reasonably likely to be viewed by another" standard in determining appellant's guilt. (R.425-28) Accordingly, the indecent act conviction here needs to be reversed.

I also do not agree with the majority now adopting a broader rule of criminal liability than approved in Berry based on dicta in United States v. Izquierdo, 51 MJ 421, 423 (1999) (a case decided after appellant's trial), and applying it in appellant's

case.[*]  The majority would hold that consensual sexual acts by a servicemember can be considered "open and notorious" (and, thus, criminal) when committed "in such a place and under such circumstances that it is reasonably likely to be seen by others even though others actually do not view the acts."  __ MJ at (6).  Moreover, in applying the new standard, the majority weakly reasons that the facts of appellant's case do not satisfy this new test because "[t]he act in question [touching a female's bare breasts] could have been terminated easily and quickly . . . .  AB could have quickly pulled her shirt down and covered [her exposed breasts]." __ MJ at (7).  I have serious concerns with this vague and uncertain approach to criminal law in the consensual sex area.  See Rogers v. Tennessee, 532 U.S. 451 (2001)(due process limitation on application of a judicial construction of a criminal statute).  A crime in the area of consensual sex between adults needs to be clear and certain.

Finally, I disagree with this new rule of the majority, which is apparently derived from the decision of the Navy-Marine Corps Court of Military Review in United States v. Carr, 28 MJ 661, 664 (NMCMR 1989).  See United States v. Izquierdo, supra at 423-24 (Sullivan, J., concurring in the result).

---

[*] The majority opinion in Izquierdo reversed one of two convictions for indecent acts because it concerned sexual acts which occurred between a servicemember and another when "the door was closed and nobody else was in the room."  This is the same standard used in United States v. Berry, 6 USCMA 609, 614, 20 CMR 325, 330 (1956).  See United States v. Tollinchi, 54 MJ 80, 83 (2000)

2

United States v. Sims, No. 01-0765/AR

CRAWFORD, Chief Judge (dissenting):

This is a case of a non-commissioned officer plying a 19-year-old with alcohol and then taking sexual advantage of her by indecently "fondl[ing]" her breasts "with both hands," asking her to masturbate, and persuading her to commit fellatio on him. Although the granted issue concerns only the indecent act specification, when viewed in context with the other sexual activity behind closed doors, I am not persuaded that appellant's fondling the victim's breasts involved an activity that "could have been terminated easily and quickly." ___ MJ at (7).

The majority opinion effectively establishes a per se rule that if a sexual act takes place behind a closed door without intrusion, the act cannot be "indecent" as a matter of law. Having considered it, along with other cases involving sexual offenses, see, e.g., United States v. Baker, No. 01-0064, ___ MJ ___ (2002); United States v. Ayers, 54 MJ 85, 95, 99 (2000)(Crawford, C.J., concurring in part and dissenting in part; Sullivan, J., dissenting); United States v. Tollinchi, 54 MJ 80, 83 (2000)(Sullivan, J., concurring in part and dissenting in part; Crawford, C.J., dissenting); United States v. Morrison, 52 MJ 117, 124 (1999)(Sullivan, J., joined by Crawford, J., dissenting); United States v. Hoggard, 43 MJ 1, 4, 8

(1995)(Crawford, J., dissenting in part and concurring in the result in part; Sullivan, C.J., dissenting); United States v. Cage, 42 MJ 139, 145, 147 (1995)(Sullivan, C.J., and Crawford, J., dissenting), I must once again express my concern with the impact of the majority opinion on prevailing jurisprudence, the rights of victims, and the public perception of military justice.

Appellant pleaded guilty. Because appellant's plea is provident under our prior case law, RCM 910, Manual for Courts-Martial, United States (2000 ed.), and United States v. Vonn, ___ U.S. ___, ___, 122 S.Ct. 1043, 1052-53 (2002), I respectfully dissent.

In order to affirm a conviction of committing an indecent act, there must be a finding:

> (1) That the accused committed a certain wrongful act with a certain person;
>
> (2) That the act was indecent; and
>
> (3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Para. 90b, Manual, supra.

> 'Indecent' signifies that form of immorality relating to sexual impurity which is not only grossly vulgar, obscene, and repugnant to common propriety, but tends to excite lust and deprave the morals with respect to sexual relations.

Para. 90c.

Appellant argues that his guilty plea to committing an indecent act was improvident because the act itself was not "open and notorious."  RCM 910(e) states that "[t]he military judge shall not accept a plea of guilty without making such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea[.]"  As the majority states, "[i]n order to establish an adequate factual predicate for a guilty plea, the military judge must elicit 'factual circumstances as revealed by the accused himself [that] objectively support that plea.'"  ___ MJ at (5), quoting United States v. Davenport, 9 MJ 364, 367 (CMA 1980).  The majority continues, "It is not enough to elicit legal conclusions. The military judge must elicit facts to support the plea of guilty."  Id., citing United States v. Outhier, 45 MJ 326, 331 (1996).

As to the indecency of the act,

> [t]he public nature of an act is not always
> determined by the place of occurrence.  A private
> residence in which other persons are gathered may
> be regarded as a public place for the purpose of
> evaluating the character of conduct by one of the
> persons.  This is particularly true when the act
> is of such a nature as to bring discredit upon
> the armed forces.  United States v. Lowe, 4 USCMA
> 654, 16 CMR 228.  An act, therefore, may be "open
> and notorious" not merely because of the locus,
> but because of the actual presence of other
> persons.  We doubt, for example, that any

reasonable person would contend that an act of fornication committed in full and open view of twenty persons gathered in a private home is not so aggravated in nature as to constitute an offense under the Uniform Code. How many persons then need be present to make the act a public one? In our opinion, the act is "open and notorious," flagrant, and discrediting to the military service when the participants know that a third person is present.

United States v. Berry, 6 USCMA 609, 614, 20 CMR 325, 330

(1956). This definition was further restricted in United

States v. Izquierdo, 51 MJ 421 (1999), when this Court held

that

[s]exual acts are considered to be committed openly and notoriously when such acts are performed in such a place and under such circumstances that it is reasonably likely to be seen by others even though others actually do not view the acts. In determining if sexual acts are performed openly and notoriously, you must look not only to the location of the act itself, but also to the attendant circumstances surrounding their commission.

Id. at 423 (emphasis added).

Appellant's stipulation of fact stated:

On the evening of 12 November 1998, the accused hosted a promotion party for himself at his Villa on Eskan Village in Riyadh, Saudi Arabia. Approximately 30-40 persons attended the party to include both civilians and military personnel. The party attendees entertained themselves by mingling with one another, playing cards, and dancing to loud music. Many of those in attendance were combatants, and hence subject to General Order Number 1 which prohibits the consumption of alcohol by combatant personnel. In spite of his knowledge of the combatant-status of many of those in attendance, SSG Sims provided beer, and a vodka-punch mix to the partiers. For

4

this, SSG [] Sims received a General Officer Memorandum of Reprimand for having served alcohol to combatants.  The GOMOR has been filed in his OMPF.  The accused's willful disobedience, lack of judgment, and lack of integrity were specifically cited by MG Marcello as reasons for imposing the GOMOR.

. . . Prior to this party, PFC [AB] and SSG Sims had not known or been acquainted with one another.

. . . the accused was taken to his room . . . . While in the room, the accused and several other male soldiers began to watch a very provocative video about "Freak-Nik."  This is an annual event held in Atlanta, Georgia, attended by mainly young African-American men and women.  At approximately 2400 the accused approached PFC [AB] and asked her back to his bedroom.  Both went to the bedroom accompanied by three other soldiers.  Once back in his bedroom, the accused, PFC [AB], and the other three party attendees engaged in conversational pleasantries.  Within minutes, PFC [AB] was left alone with the accused in his bedroom after the other three party attendees departed the bedroom.

As soon as PFC [AB] was left alone with the accused, he asked her if she would show him one of her breasts.  PFC [AB] denied this request. The accused then asked if [she] could show them without the top.  She lifted her shirt, and the accused stared at the breasts and began to lustfully fondle them with both hands. Afterwards, the accused asked her if PFC [AB] would masturbate in front of him.  She denied the request.  The accused then asked PFC [AB] to perform fellatio on him; she complied.  The accused admits that placing his penis in her mouth was an act of unnatural carnal copulation as that is defined in Article 125, UCMJ.

The accused admits that his actions with PFC [AB] were, under the circumstances, indecent. The accused realizes that his conduct was to the prejudice of good order and discipline and

service discrediting because it was irresponsible for a newly promoted Staff Sergeant to conduct himself in such a manner with a junior enlisted soldier who had been drinking alcohol supplied by the accused.  The accused was also aware that [he] was probably violating a local order barring deployed soldiers from being alone in the sleeping quarters of soldiers of the opposite sex.  Moreover, he knew, or at least believed, that there was a substantial risk that his activity could be discovered at any given time if someone had walked in on them.

(Emphasis added.)  The following subsequently took place during appellant's providence inquiry:

MJ:   Well, what purpose or reason would anybody, if any, have to come to your room during the party that night?

ACC:  Ah--Some--Some people knew there was liquor back there--the people that I told and also some people to get their personal effects--some--some of the women, like their purses.

MJ:   Okay, were there--Do you know why we're having such a large--a long conversation on such a relatively simply offense?

ACC:  Negative, Your Honor.

MJ:   Would you like to know?

ACC:  Yes, Your Honor.

MJ:   Consensual sexual conduct ordinarily--and in your case would ordinarily be--not a criminal offense if done in private.  However, it can constitute an indecent act if done in public.  And "public" includes that there is a substantial risk that your conduct--your activities could be viewed by another or it's reasonably likely that your conduct could be viewed by another.  So I'm trying to figure out what is the indecent nature of the conduct and the contact you

6

had with Private [AB] that would make this indecent, that is, that would make it likely or reasonably likely or a substantial risk that you could be discovered.  So that's what I'm trying to find out.  You're the guy pleading guilty, not anybody else.

ACC: Yes, Your Honor.  I understand, Your Honor.

MJ:  Did the women store their purses and other personal effects in your room?

ACC: Yes, Your Honor.

MJ:  Was that to provide security for those effects?

ACC: Yes.  Because it was my party they--they only knew me so they decided to put their purses back in my room.  Yes, Your Honor.

MJ:  Okay.  And did you leave the door to your room unlocked throughout the evening?

ACC: Yes, Your Honor.

MJ:  Were people coming and going throughout the evening?

ACC: Only the people I let into my room.  Yes, Your Honor.

MJ:  Well, if somebody was in the party and they wanted to leave would they ask your permission before leaving or would there be any problem if they went to the room and got their purse?

ACC: It wouldn't be any problem for them to get their purse.  No, sir.

MJ:  Did you put the videotape in the TV?

ACC: No, sir.  The video had been playing most of all of the night.

MJ:  Who put the videotape in?

7

ACC: I--I do not know who put the videotape in, Your Honor.

MJ: That would indicate to me that somebody went into your room without your permission and watched your videotape. Would that be correct or incorrect?

ACC: That would be correct, Your Honor.

MJ: And, at the time that you went into the room with Private [AB], did you realize that somebody had been into your room to use your room to watch the video?

ACC: Yes, Your Honor.

MJ: Okay. Had people been going back into the back of your room by themselves, in other words, not in your company to go into the room to sneak a drink?

ACC: Later I found out. Yes, Your Honor.

MJ: Well, did you have reason to believe or did you know prior to going to the back of the room with Private [AB] that some of the guys had been back there or some of the people had been going into your room to the private stash of alcohol?

ACC: Yes, Your Honor.

MJ: You knew that for a fact?

ACC: Yes, Your Honor, by one of the empty bottles. Yes, Your Honor.

MJ: And did you know that at the time that you were in the room with Private [AB] that people had been going back there and using the stash?

ACC: Yes, Your Honor.

MJ: No doubt about that?

ACC: No doubt about that, Your Honor.

MJ: At the time that you were in the room alone with Private [AB], what would keep one of the ladies who had their purses back there from coming into the room or one of the people who knew about the private store of alcohol from coming into the room and seeing what you were doing?

ACC: Nothing, Your Honor.

MJ: Okay. While in the room, what occurred between you and Private [AB] with regard to touching her breasts?

ACC: In regards to that, Your Honor, we were watching the video, having a drink and in the video some--some of the females were lifting up their shirts and acting wildly and--and I asked her if I could touch her breasts, Your Honor.

MJ: Why'd you do that?

ACC: It was in poor judgment, Your Honor.

MJ: Well, yeah, but I mean were you--I'm going to be funny for a minute but just to illustrate why I'm asking you the question. Did you ask her to do that so you could check her for a sunburn?

ACC: Negative, Your Honor.

MJ: Why did you do it?

ACC: To--to touch her breasts, Your Honor.

MJ: For sexual gratification?

ACC: Yes, Your Honor.

MJ: All right. And what did she say?

ACC: She lifted up her shirt, Your Honor.

MJ:   And what did you do?

ACC:  I touched her breasts, Your Honor.

MJ:   If somebody had walked in the room at that minute, very carefully, would they have seen her breasts?

ACC:  Yes, Your Honor.

MJ:   Would they have seen you touching her breasts?

ACC:  Yes, Your Honor.

MJ:   What do you think about somebody walking into a room and seeing a noncommissioned officer with a young woman in your government provided quarters, in a forward deployed Moslem country touching a woman's breasts?

ACC:  It's not appropriate, Your Honor.

MJ:   Do you think that when soldiers do or have learned about what you've just told me, do you think they would have greater respect for you or less respect for you?

ACC:  Less respect for me, Your Honor.

MJ:   Do you believe that soldiers are required to have respect for you in order for you to be an effective leader?

ACC:  Yes, Your Honor.

MJ:   Do you think ineffective leadership destroys discipline and morale?

ACC:  Yes, Your Honor, I do.

(Emphasis added.)

United States v. Sims, No. 01-0765/AR

The majority claims that this case is weaker than Izquierdo because appellant was in his private bedroom, which allowed a greater expectation of privacy than a shared barracks room. Consequently, the majority concludes that appellant's "responses and the stipulation of fact state only the conclusion" that there was a substantial risk of discovery, and that is not enough to satisfy the required factual predicate for "open and notorious." ___ MJ at (7).

I disagree. Izquierdo makes it clear that that is exactly what is required. The facts show that it was reasonably likely that the conduct would be viewed by others for several reasons: (1) there was no lock on the door; (2) there were approximately 30-40 people at the party; (3) it was a small place; (4) purses were kept in the room; (5) the "special brew" was kept in the room; (6) the video "Freak-Nik" was playing in the room; and (7) the providency inquiry was sufficient (as was the agreed stipulation of facts) to meet the standard set forth in RCM 910(e). See Vonn, ___ U.S. at ___, 122 S.Ct. at 1052-53 (omission from guilty plea inquiry results in reversal of conviction only when an appellant demonstrates his substantial rights were affected, e.g., no automatic reversal when mistake conducting inquiry under

11

Fed.R.Crim.P. 11 does not impact on "the overarching issues of knowledge and voluntariness"); RCM 910(c).

The military judge carefully covered every element of the offense with appellant, took the time to explain that the standard was a "substantial risk," and carefully placed on the record exactly how substantial that risk was. Appellant admitted this risk at trial and should not be allowed now to claim that his plea was improvident. Accordingly, I dissent.