# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CAMPANELLA, and CELTNIEKS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E2 MARQUILL D. WILLIS**
**United States Army, Appellant**

ARMY 20120999

U.S. Army Combined Arms Support Command Sustainment Center of Excellence
and Fort Lee
James W. Herring, Military Judge
Colonel Andrew J. Glass, Staff Judge Advocate

For Appellant:  Colonel Kevin Boyle, JA; Major Amy E. Nieman, JA, Captain Robert N. Michaels, JA (on brief).

For Appellee:  Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major Daniel D. Derner, JA; Captain Nathan S. Mammen, JA (on brief).

13 February 2015

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Judge:

A panel of officer and enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification each of conspiracy to commit rape, conspiracy to commit forcible oral sodomy, and conspiracy to commit forcible anal sodomy; three specifications of rape; two specifications of indecent conduct; two specifications of forcible sodomy; and one specification of assault, in violation of Articles 81, 120, 125, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 881 920, 925, 928 (2006 & Supp. IV 2011) [hereinafter UCMJ].  The panel sentenced appellant to a dishonorable discharge, confinement for eighteen months, and reduction to the grade of E-1.  The convening authority approved the sentence as adjudged.

We now review appellant's case under Article 66, UCMJ. One of appellant's two assignments of error warrants discussion and relief. Appellant argues his convictions for conspiracy to commit rape, conspiracy to commit forcible oral sodomy, and conspiracy to commit forcible anal sodomy (Specifications 1, 2, and 3 of Charge III, respectively) constitute a single conspiracy. We agree. The remaining assignment of error and the matters raised personally by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) do not warrant relief. Additionally, although not raised by the parties, we consolidate appellant's two indecent acts specifications into a single specification.

## BACKGROUND

On or about 12 November 2011, appellant and his friends, Private First Class (PFC) JC, Private (PV1) AB, and PFC AP, traveled from Fort Lee, Virginia, to Colonial Heights, Virginia, on a weekend pass from Advanced Individual Training (AIT). There appellant and his friends rented a room at Candlewood Suites.

After checking into the hotel, appellant saw PV1 KE, a female soldier, in the hotel lobby. Private KE was attending AIT at Fort Lee with appellant. Private KE was also on pass and staying at the hotel with friends. Appellant and PV1 KE previously had a sexual encounter during AIT.

Appellant approached PV1 KE and began flirting with her and kissing her. Appellant guided PV1 KE into the elevator, unbuckled his pants and attempted to undress PV1 KE. When the elevator door opened, PFC JC was standing outside the elevator door. Appellant led PV1 KE to his room. Private First Class JC followed. Private AB and PFC AP were already present inside the room. Once inside the room, appellant continued to kiss PV1 KE and attempted to remove her clothes in an effort to have sexual intercourse. Private KE, however, refused to have sex while others were in the room. Appellant directed the three other soldiers to leave the room, which they did. Appellant proceeded to have consensual sex with PV1 KE.

Once finished, appellant got up and opened the hotel room door. Private First Class JC and PV1 AB came back into the room. At this point, PV1 KE was still naked on the bed. She got up, grabbed some of her clothes and went into the bathroom. Appellant and PV1 AB followed PV1 KE into the bathroom and suggested she perform oral sex on one of them while simultaneously having vaginal sex with the other. Private KE refused and walked out of the bathroom.

After leaving the bathroom, PV1 AB pushed PV1 KE onto the bed, climbed on top of her, and began "grinding" on her while appellant stood at the foot of the bed and PFC JC stood to the right of the bed. Private AB got up and continued to ask PV1 KE for oral sex but she refused. Appellant repositioned PV1 KE on the bed,

and despite her protests, pulled her pants down to her ankles and forced his penis inside her vagina while holding her legs to his chest.

While appellant was doing this, PFC JC tried to put his erect penis in PV1 KE's mouth but PV1 KE turned her head and refused. Seeing this, appellant said "I got you, battle," slapped PV1 KE's thigh, and forcefully thrust his penis inside her vagina, thereby resulting in her opening her mouth. Private First Class JC inserted his penis into PV1 KE's mouth and while holding her head in place with both his hands. Private AB left the room.

Appellant and PFC JC then switched places. While PFC JC forcibly penetrated PV1 KE's vagina with his penis, appellant forcibly orally sodomized her.

At some point, wanting to switch again, appellant pushed PFC JC off PV1 KE and pulled PV1 KE on top of him onto a chair, with her facing away from him. Appellant then directed PV1 KE to engage in vaginal sexual intercourse with him while he was seated in the chair, but she refused and attempted to get up. When PV1 KE tried to stand up, appellant moved her back to the bed, bent her over at the waist and penetrated her vagina again with his penis.

Private First Class JC wanted to have sex again so he suggested one of them have anal sex with her while the other had vaginal sex. Appellant then rolled PV1 KE over so that he was underneath her penetrating her vaginally, holding her down face-to-face on top of him, while PFC JC penetrated her anus with his penis. When PV1 KE yelled stop, PFC JC laughed, and then he stopped, got dressed and left the room.

Appellant then put PV1 KE on her back and continued to penetrate her vagina until he ejaculated. Appellant got up and said "get dressed, battle" to PV1 KE.

## LAW AND DISCUSSION

### *Conspiracy*

Appellant was found guilty, *inter alia*, of three separate specifications of conspiracy: conspiracy to commit rape, conspiracy to commit forcible oral sodomy and conspiracy to commit forcible anal sodomy. At trial, defense counsel asked the court to consolidate the three conspiracy specifications on the basis that there was only one conspiracy. The military judge denied the defense motion. Appellant argues here that he should only be convicted of a single conspiracy.

A conspiracy exists when one "enters into an agreement with" another and "performs an overt act for the purpose of bringing about the object of the

conspiracy." *Manual for Courts-Martial, United States* (2008 ed.) [hereinafter *MCM*], Part IV, ¶ 5.b.  As we noted in *United States v. Finlayson*:

> "[C]onspiracy is a partnership in crime." *Pinkerton v. United States*, 328 U.S. 640, 644 (1946).  The essence of a conspiracy is in the "agreement or confederation to commit a crime, and that is what is punishable as a conspiracy, if any overt act is taken in pursuit of it." *United States v. Bayer*, 331 U.S. 532, 542 (1947); *see Braverman v. United States*, 317 U.S. 49, 53 (1942).  As such, it is ordinarily the agreement that forms the unit of prosecution for conspiracy, "even if it contemplates the commission of several offenses."  Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 683 (3rd ed. 1982) (citing *Braverman*, 317 U.S. at 53); *see United States v. Pereira*, 53 M.J. 183, 184 (C.A.A.F. 2000) (finding single conspiracy to commit murder, robbery, and kidnapping); *cf. United States v. Universal C. I. T. Credit Corp.*, 344 U.S. 218, 221 & n.3 (1952) (introducing concept of "unit of prosecution")
>
> . . . .
>
> Whether a single conspiracy or multiple conspiracies existed in a given circumstance is a question of fact determined by reference to the totality of the circumstances. *See United States v. Fields*, 72 F.3d 1200, 1210 (5th Cir. 1996); 16 AM. JUR. 2D *Conspiracy* § 11 (2002). As the United States Supreme Court noted long ago, "the character and effect of a conspiracy [are] not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole." *United States v. Patten*, 226 U.S. 525, 544 (1913).

58 M.J. 824, 826-27 (Army Ct. Crim. App. 2003) (footnote omitted); *see also Braverman*, 317 U.S. at 53 (1942) ("The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one"); *Pereira*, 53 M.J. at 184 ("A single agreement to commit multiple offenses ordinarily constitutes a single conspiracy.").

The factors used to determine the number of conspiracies include: "(1) the objectives and (2) nature of the scheme in each alleged conspiracy; (3) the nature of the charge and (4) the overt acts alleged in each; (5) the time and (6) location of each of the alleged conspiracies; (7) the conspiratorial participants in each; and (8) the degree of interdependence between the alleged conspiracies."  *Finlayson*, 58 M.J. at 827.

After weighing these factors, we conclude, under the totality of the circumstances, appellant and his co-conspirator, PFC JC, engaged in a single

conspiracy with diverse means to effectuate the object of the conspiracy – namely, to sexually assault PV1 KE. While the nature of the criminal enterprise evolved and the overt acts of each sexual offense alleged are different, the sexual nature of the objective of the conspiracy is the same. The three underlying crimes alleged in each conspiracy are all of a sexual nature. Each act took place at the same location during the same episode or course of conduct. The participants in the three conspiracy specifications are the same and their acts are interdependent. Many of the object offenses occurred simultaneously and some occurred at the urging of a co-conspirator while other sexual offenses were ongoing. Given the facts of this case, we conclude that sufficient facts to distinguish separate conspiracies from one another do not exist, and appellant and his co-conspirator had a single criminal agreement to commit multiple crimes.

*Indecent Acts and Unreasonable Multiplication of Charges*

Although not raised by the parties, we find an unreasonable multiplication of charges for appellant's two convictions for indecent acts under Article 120(k), UCMJ. "What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." Rule for Courts–Martial 307(c)(4). The prohibition against unreasonable multiplication of charges "addresses those features of military law that increase the potential for overreaching in the exercise of prosecutorial discretion." *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012) (quoting *United States v. Quiroz*, 55 M.J. 334, 337 (C.A.A.F. 2001)). In *Quiroz*, our superior court listed five factors to guide our analysis of whether charges have been unreasonably multiplied:

(1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?;

(2) Is each charge and specification aimed at distinctly separate criminal acts?;

(3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?;

(4) Does the number of charges and specifications [unreasonably] increase the appellant's punitive exposure?; and

(5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

55 M.J. at 338–39 (internal quotation marks omitted).

5

The elements of "indecent acts" are: (1) the accused engaged in certain conduct; and (2) the conduct was indecent conduct. *MCM,* Part IV, ¶ 45.b.(11). "Indecent conduct" is "that form of immorality relating to sexual impurity that is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations." UCMJ, art. 120(t)(12). Indecent acts has traditionally included fornication committed "openly and notoriously." *See United States v. Izquierdo*, 51 M.J. 421, 422 (C.A.A.F. 1999); *United States v. Berry*, 6 U.S.C.M.A. 609, 614, 20 C.M.R. 325, 330 (1956) (both cases considering indecent acts charged under Article 134, UCMJ).

The record reflects that two indecent acts which took place in the presence of others arose during the course of the same transaction. Under the facts of this case, we find the unit of prosecution is the open and notorious nature in which the sexual offenses took place, not the number of sexual acts which were done in an open and notorious way. Application of the *Quiroz* factors to the evidence elicited during the colloquy requires the consolidation of the particulars in Specifications 4 and 5 of Charge I

## CONCLUSION

After consideration of the entire record of trial, appellant's assignments of error, and the matters personally raised by appellant pursuant to *Grostefon*, Specifications 2, 3, and 4 of Charge III are consolidated into a single specification, numbered Specification 2 of Charge III, to read as follows:

> In that Private (E-2) Marquill Willis, U.S. Army, did at or near Colonial Heights, Virginia, on or about 12 November 2011, conspire with Private First Class Jeremy Champion to commit offenses under the Uniform Code of Military Justice, to wit: rape, forcible oral sodomy, and forcible anal sodomy, and in order to effect the objects of the conspiracy the said Private (E-2) Marquill Willis, penetrated Private (E-1) K.Y.E.'s vulva with his penis; and caused Private K.Y.E. to open her mouth by hitting her upper thigh, allowing Private First Class Jeremy Champion to put his penis in her mouth; and held the body of Private (E-1) K.Y.E. with his hands and penetrated the vulva of Private (E-1) K.Y.E. with his penis, allowing Private First Class Jeremy Champion to penetrate the anus of Private (E-1) K.Y.E.

The findings of guilty of Specifications 3 and 4 of Charge III are set aside and those specifications are dismissed.

Renumbered Specifications 4 and 5 of Charge I are consolidated into a single specification, renumbered Specification 4 of Charge I, to read as follows:

6

      In that Private (E-2) Marquill Willis, U.S. Army, did at or near Colonial Heights, Virginia, on or about 12 November 2011, wrongfully commit indecent conduct, to wit: engaging in oral sodomy and sexual intercourse in the presence of others.

The finding of guilty of renumbered Specification 5 of Charge I is set aside and that specification is dismissed.

      Those consolidated specifications are AFFIRMED. The remaining findings of guilty are AFFIRMED. We are able to reassess the sentence on the basis of the errors noted, and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986). In evaluating the *Winckelmann* factors, we find no dramatic change in the penalty landscape or exposure which might cause us pause in reassessing appellant's sentence. Second, although appellant was sentenced by members, here, this factor carries less weight because the remaining offenses do not "address service custom, service discrediting conduct or conduct unbecoming." *Winckelmann*, 73 M.J. at 16. Third, the gravamen of appellant's misconduct remains unchanged. Finally, based on our experience, we are familiar with the remaining offenses so that we may reliably determine what sentence would have been imposed at trial. After reassessing the sentence based on the entire record, the sentence is AFFIRMED. We find this reassessed sentence is not only purged of any error but is also appropriate. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by our decision, are ordered restored.

      Senior Judge TOZZI and Judge CELTNIEKS concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

7