UNITED STATES, Appellee

v.

Ivan D. GOINGS, Staff Sergeant
U.S. Army, Appellant

No. 11-0547

Crim. App. No. 20080602

United States Court of Appeals for the Armed Forces

Argued November 13, 2012

Decided May 23, 2013

RYAN, J., delivered the opinion of the Court, in which BAKER,
C.J., ERDMANN, J., and EFFRON, S.J., joined.  STUCKY, J., filed
a separate dissenting opinion.


Counsel

For Appellant:  Captain Kristin B. McGrory (argued); Lieutenant
Colonel Jonathan F. Potter and Major Jacob D. Bashore (on
brief); Lieutenant Colonel Imogene M. Jamison and Lieutenant
Colonel Peter Kageleiry Jr.

For Appellee:  Captain Edward J. Whitford (argued); Lieutenant
Colonel Amber J. Roach and Major Catherine L. Brantley (on
brief); Major LaJohnne A. White and Captain Bradley M. Endicott.

Military Judge:  Gregg Marchessault


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Judge RYAN delivered the opinion of the Court.

Contrary to his pleas, a military judge sitting as a general court-martial convicted Appellant of one specification of rape, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2006), and one specification of committing an indecent act with another, in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2006).  The adjudged sentence provided for a dishonorable discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to grade E-1.  The convening authority disapproved the adjudged forfeitures but approved the remainder of the adjudged sentence, and waived the forfeiture of automatic pay and allowances for six months.

Before the United States Army Court of Criminal Appeals (ACCA), Appellant argued for the first time that his conviction for committing an indecent act with another under Article 134, UCMJ, Specification 6 of Charge II (Specification 6), should be set aside in light of the Supreme Court's holding in Lawrence v. Texas, 539 U.S. 558 (2003).[1]  Appellant, however, fails to meet

---

[1] We granted review of the following issues:

  I.   WHETHER LAWRENCE v. TEXAS EXTENDS A ZONE OF PRIVACY TO THE INDECENT ACT OF WHICH APPELLANT WAS CONVICTED.

  II.  WHETHER SPECIFICATION 6 OF CHARGE II FAILS TO STATE AN OFFENSE BECAUSE IT DOES NOT EXPRESSLY ALLEGE OR NECESSARILY IMPLY THE TERMINAL ELEMENT OF ARTICLE 134, UCMJ.

his burden of showing that the military judge erred, let alone plainly and obviously erred, in allowing the conduct described in Specification 6 to serve as the basis for his indecent act conviction under Article 134, UCMJ.

Moreover, while the ACCA misapplied United States v. Fosler, 70 M.J. 225 (C.A.A.F. 2011), in its consideration of the Government's failure to allege the terminal element of Article 134, UCMJ, in the contested specification, review of the record reveals that Appellant was not prejudiced by this error. See United States v. Humphries, 71 M.J. 209 (C.A.A.F. 2012).

Accordingly, the conviction and sentence are affirmed.

## I. FACTS

On August 2, 2007, German police searched Appellant's off-post apartment pursuant to a search warrant to investigate claims of sexual assault. During the search, the police seized, among other items, a video camera and several 8-millimeter video recordings. One of the recordings depicts Appellant and an unidentified female engaged in consensual sexual activity, including intercourse, in his off-post apartment. The recording was made by an unidentified male who filmed the sexual activity while in the presence of Appellant and the unidentified female. While the recording further shows the unidentified male

---

United States v. Goings, 71 M.J. 334 (C.A.A.F. 2012) (order granting review).

physically participating in the sexual activity, this participation did not form the basis of the specification at issue.  At trial, the Government conceded that the participants were aware that they were being recorded and that the sexual activity was consensual.

Based on this conduct, the Government charged Appellant with, among other offenses, committing an indecent act with another, in violation of Article 134, UCMJ.  The specification relating to this charge, Specification 6, reads:

> In that SSG Ivan D. Goings . . . did . . . wrongfully commit an indecent act with another male and a female by allowing the other male to be present and video record on a video cassette tape the said SSG Ivan D. Goings engaging in sexual intercourse with the female.

Specification 6 did not allege the terminal element of Article 134, UCMJ.  However, the Government argued that the evidence was prejudicial to good order and discipline in its opening statement, and presented evidence, during its case-in-chief, as to why the indecent act with another was both prejudicial to good order and discipline and service discrediting.  Appellant, in turn, defended against Specification 6 on the ground that neither clause 1 nor clause 2 of the terminal element had been met, during both his cross-examination of Government witnesses and closing argument.  At no time during trial did Appellant raise the argument that he was not guilty because his conduct was constitutionally protected.

4

Instead, his defense was that his conduct was neither prejudicial to good order and discipline nor service discrediting.

## II.   ACCA DECISION

The ACCA summarily rejected Appellant's Lawrence claim without discussion and held that the court-martial's findings and sentence, as approved, were correct in law and fact.  United States v. Goings, No. ARMY 20080602 (A. Ct. Crim. App. May 5, 2011).  On October 14, 2011, this Court vacated the ACCA's decision and ordered the case remanded to that court for consideration in light of United States v. Fosler, 70 M.J. 225 (C.A.A.F. 2011).  United States v. Goings, 70 M.J. 376 (C.A.A.F. 2011) (order granting review and summarily vacating the lower court's decision).  Upon reconsideration, the ACCA again held that the findings and sentence, as approved, were correct in law and fact.  United States v. Goings, No. ARMY 20080602 (A. Ct. Crim. App. Feb. 7, 2012).  Specifically, the ACCA found that Specification 6 "can be reasonably construed to imply" the terminal element of that charge.  Id. at 2 n.2.

## III.   DISCUSSION

### A.

Appellant was convicted of indecent acts with another, in violation of Article 134, UCMJ.  This offense consists of three elements:  (1) "[t]hat the accused committed a certain wrongful

5

act with a certain person; (2) [t]hat the act was indecent; and (3) [t]hat . . . the conduct . . . was to the prejudice of good order and discipline . . . or was of a nature to bring discredit upon the armed forces." Manual for Courts-Martial, United States pt. IV, para. 90.b. (2005 ed.) (MCM).[2] Indecent is defined as "that form of immorality relating to sexual impurity which is not only grossly vulgar, obscene, and repugnant to common propriety, but tends to excite lust and deprave the morals with respect to sexual relations." MCM pt. IV, para. 90.c. As further limited by this Court's decisions in United States v. Snyder, 1 C.M.A. 423, 4 C.M.R. 15 (1952), and United States v. Berry, 6 C.M.A. 609, 20 C.M.R. 325 (1956), private consensual sexual activity is not punishable as an indecent act absent aggravating circumstances. Snyder, 1 C.M.A. at 427, 4 C.M.R. at 19; Berry, 6 C.M.A. at 614, 20 C.M.R. at 330. One such aggravating circumstance is that the sexual activity is "open and notorious," which includes when the participants know that someone else is present. United States v. Izquierdo, 51

---

[2] The videotaping occurred "prior to October 1, 2007, the effective date of the amendments to the UCMJ and [MCM] made by the National Defense Authorization Act for Fiscal Year 2006, Pub. L. No. 109-163, § 552, 119 Stat. 3136, 3256-63 (2006), so [the offense was] properly charged under Article 134, UCMJ. See MCM, Punitive Articles Applicable to Sexual Assault Offenses Committed Prior to 1 October 2007 app. 27 at A27-2 (2008 ed.)." United States v. Rose, 71 M.J. 138, 140 n.3 (C.A.A.F. 2012).

M.J. 421, 422 (C.A.A.F. 1999); Berry, 6 C.M.A. at 614, 20 C.M.R. at 330.

Appellant does not dispute that the offense of indecent acts with another, as proscribed under Article 134, UCMJ, and as limited by this Court's precedent, is facially constitutional. Instead, he appears to argue that the statute is unconstitutional as applied to him, Brief for Appellant at 12-18, United States v. Goings (C.A.A.F. July 20, 2012) (No. 11-0547), despite failing to object at trial on this ground.[3] Since the error Appellant now alleges is constitutional, and in light of this Court's (1) "presumption against the waiver of constitutional rights" and (2) requirement that a waiver "clearly establish[] . . . an intentional relinquishment of a known right or privilege," United States v. Sweeney, 70 M.J. 296, 303-04 (C.A.A.F. 2011) (quoting United States v. Harcrow, 66 M.J. 154, 157 (C.A.A.F. 2008)), we consider the alleged error

---

[3] From start to finish, the contested issue in the case was whether Appellant's conduct met the terminal element of Article 134, UCMJ. Appellant argued that his conduct was insufficient to meet the terminal element, in part, because, in his view, his conduct would be constitutionally protected in a non-military setting. The trier of fact disagreed, and the ACCA concluded that the evidence was legally sufficient. Goings, No. ARMY 20080602, slip op. at 1. What amounts to an argument that the Government has not put forth legally sufficient evidence to support an Article 134, UCMJ, conviction is fundamentally different from a constitutional argument that, in the military context, Appellant's conduct is protected.

forfeited, and not waived.  We therefore review for plain error. Id. at 304.[4]

B.

We review whether a statute is unconstitutional as applied de novo.  United States v. Ali, 71 M.J. 256, 265 (C.A.A.F. 2012).  To determine if "a statute is 'unconstitutional as applied,' we conduct a fact-specific inquiry."  Id.  Upon plain error review, to prove that Article 134, UCMJ -- a facially constitutional criminal statute -- is unconstitutional as applied to him, Appellant must point to particular facts in the record that plainly demonstrate why his interests should overcome Congress' and the President's determinations that his conduct be proscribed.  See United States v. Vazquez, 72 M.J. 13, 16-21 (C.A.A.F. 2013); Ali, 71 M.J. at 266.  Appellant fails to meet this burden.

There is no question that Appellant's rights as a member of the military are not coextensive with those enjoyed by civilians.  See Parker v. Levy, 417 U.S. 733, 758 (1974) (upholding the constitutionality of Article 134, UCMJ, and observing that "[t]he fundamental necessity for obedience, and the consequent necessity for imposition of discipline, may

---

[4] "Under plain error review, this Court will grant relief only where (1) there was error, (2) the error was plain and obvious, and (3) the error materially prejudiced a substantial right of the accused."  Sweeney, 70 M.J. at 304.

render permissible within the military that which would be constitutionally impermissible outside it"). And no one asserts that the interest recognized in Lawrence is somehow exempt from adaptation to the military environment. See United States v. Marcum, 60 M.J. 198, 207 (C.A.A.F. 2004) (in the context of an as-applied challenge under Lawrence, requiring consideration of whether there are "additional factors relevant solely in the military environment that affect the nature and reach of the Lawrence liberty interest"). Consonant with his authority to act as commander-in-chief and his duty to "take care that the laws be faithfully executed," U.S. Const. art. II, §§ 2-3, the President has listed indecent acts with another as a "way[] in which Article 134, UCMJ, might be charged," United States v. Jones, 68 M.J. 465, 472 (2010). See also United States v. Miller, 47 M.J. 352, 356 (C.A.A.F. 1997); United States v. Gonzalez, 42 M.J. 469, 474 (C.A.A.F. 1995). The commission of sexual acts in the presence of a third party has been held to be sufficiently "open and notorious" to constitute an indecent act, punishable under Article 134, UCMJ, see Izquierdo, 51 M.J. at 422-23 (C.A.A.F. 1999) ("[An] act is 'open and notorious' . . . when the participants know that a third person is present." (citing Berry, 6 C.M.A. at 614, 20 C.M.R. at 330)), and we do not doubt that permitting the filming of those same acts is also sufficient. Cf. United States v. Cohen, 63 M.J.

9

45, 53 (C.A.A.F. 2006) (holding that Article 31(b) rights warnings were required when the appellant described his role in photographing a sexual assault).[5]  Congress' and the President's determination to proscribe such acts that are "to the prejudice of good order and discipline" or "of a nature to bring discredit upon the armed forces," Article 134, UCMJ; MCM, pt. IV, para. 90.b. (2005 ed.), no doubt furthers the military's unique interest in obedience and discipline, see Levy, 417 U.S. at 758, which Marcum recognized as affecting the nature and reach of Lawrence.  See Marcum, 60 M.J. at 206-07.

Here, Appellant was convicted of "allowing [a third party] to be present and video record on a video cassette tape [Appellant] engaging in sexual intercourse with [a] female," and legally sufficient evidence was adduced at trial that this

---

[5] Additionally, that Appellant's conviction is supported by legally sufficient evidence is particularly true in light of the low evidentiary threshold that this Court has applied to Article 134, UCMJ's terminal element.  See United States v. Phillips, 70 M.J. 161, 163 (C.A.A.F. 2011) ("evidence that the public was actually aware of the conduct is not necessarily required" to support clause 2 of Article 134, UCMJ's, terminal element); United States v. Irvin, 60 M.J. 23, 26 (C.A.A.F. 2004) (finding a sufficient factual basis to support clause 1 and clause 2 of Article 134, UCMJ's, terminal element despite no evidence that any other servicemembers were aware of, or saw, the child pornography).  To the extent we should revisit the question whether a more exacting standard of proof should be required to support the terminal elements of Article 134, UCMJ, we leave that issue for a case in which it is properly raised and briefed.  See, e.g., United States v. Wilcox, 66 M.J. 442, 448-49 (C.A.A.F. 2008) (requiring a more exacting standard in the context of the First Amendment).

conduct was prejudicial to good order and discipline and service discrediting.  No one disagrees that wholly private and consensual sexual activity, without more, falls within Lawrence. But that does not answer the altogether different question whether permitting a third party to observe and memorialize one's sexual activity on videotape is categorically protected as "wholly private and consensual sexual activity" where the trier of fact has deemed the conduct to be prejudicial to good order and discipline in the armed forces and service discrediting.  We hold that, under the circumstances of this case, it is not.

In Lawrence, the focal point of the constitutional protection involved an act of sexual intimacy between two individuals in a wholly private setting without more.  Lawrence, 539 U.S. at 562-63.  Lawrence did not establish a presumptive constitutional protection for all offenses arising in the context of sexual activity.  See Lawrence, 539 U.S. at 578 (noting that "[t]he present case d[id] not involve minors[,] . . . persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused[,] . . . public conduct[,] or prostitution); Marcum, 60 M.J. at 206-07 (recognizing that consideration of military interests affect the nature and reach of Lawrence); United States v. Lebowitz, 676 F.3d 1000, 1012 n.5 (11th Cir. 2012) (holding Lawrence "immaterial" to its analysis because "[e]ven

if Lawrence protected the sexual conduct depicted on the video tape, . . . the depictions . . . traveled across state lines by means of computer" and became "publicly traded contraband"). When the conduct being charged does not fall directly within the focal point of Lawrence -- sexual conduct between two individuals in a wholly private setting that was criminal for no other reason than the act of the sexual conduct itself -- and where, as here, the predicate sexual conduct is criminal because of some additional factor (in this case, the violation of clauses 1 and 2 of Article 134, UCMJ), the burden of demonstrating that such conduct should nonetheless be constitutionally protected rests with the defense at trial. See Vazquez, 72 M.J. at 16-21; Ali, 71 M.J. at 266. Put another way, to show that a facially constitutional statute is unconstitutional as applied to a particular individual, the individual must develop facts at trial that show why his interest should overcome the determination of Congress and the President that the conduct be proscribed. See Vazquez, 72 M.J. at 16-21; Ali, 71 M.J. at 266. Here, the defense did not raise such an issue at trial or develop such facts in a motion proceeding. In that context, the military judge did not commit error, let alone plain and obvious error, in failing to sua sponte raise a Lawrence issue.

C.

We now turn to the question whether Specification 6 fails to state an offense because it does not allege the terminal element of Article 134, UCMJ. As we held in Fosler, a contested case involving an Article 134, UCMJ, offense, the terminal element must be pleaded or fairly implied, and the allegation of the act itself is insufficient to support a fair implication of the terminal element. Fosler, 70 M.J. at 229-31. Yet the ACCA, on remand for consideration of the issue in light of Fosler, determined that the error did not prejudice Appellant because "the charge and its specification can be reasonably construed to imply [the terminal element]." Goings, No. ARMY 20080602, slip op. at 2 n.2. After examining Specification 6, it is clear that Fosler foreclosed the line of reasoning upon which the ACCA based its determination. Article 134, UCMJ, has two elements: (1) a predicate act or failure to act, and (2) a terminal element. United States v. Medina, 66 M.J. 21, 25 (C.A.A.F. 2008). The terminal element of an Article 134, UCMJ, offense may not be "fairly implied" from nothing more than the language describing the alleged act or failure to act itself.[6] Fosler, 70 M.J. at 230-31.

---

[6] Moreover, the inclusion of the word "wrongfully" in Specification 6 "cannot of itself imply the terminal element." Fosler, 70 M.J. at 230.

13

This, however, does not end the inquiry as Appellant, unlike the accused in Fosler, failed to object to the specification on this ground at trial. See Humphries, 71 M.J. at 213. Because Appellant's trial occurred before this Court's decision in Fosler, we deem his failure to object as forfeiting, rather than waiving, the underlying right and apply plain error analysis. Id. at 211, 213.

Here, it was plain and obvious error for the Government not to allege the terminal element. Id. at 211, 214. "Having found plain and obvious error that was forfeited rather than waived, the remaining question is 'whether there is a remedy for the error,' which 'will depend on whether the error has prejudiced the substantial rights of the accused.'" Id. at 215 (quoting United States v. Ballan, 71 M.J. 28, 30 (C.A.A.F. 2012)). In the context of a defective specification, the prejudice analysis "demand[s] close review of the trial record." Humphries, 71 M.J. at 215. "[W]e look to the record to determine whether notice of the missing element is somewhere extant in the trial record, or whether the element is 'essentially uncontroverted.'" Id. at 215-16 (quoting United States v. Cotton, 535 U.S. 625, 633 (2002), and Johnson v. United States, 520 U.S. 461, 470 (1997)).

While up to this point we have left Humphries' fact-intensive prejudice analysis to the Courts of Criminal Appeals

14

(CCAs), and despite the fact that we would ordinarily return the record of trial in this case to the Judge Advocate General of the Army for remand to the ACCA for consideration in light of Humphries, we undertake it here for two reasons. First, in order to resolve Issue I, this Court had to conduct a fact-intensive analysis of the record to determine whether the military judge's failure to raise a Lawrence issue was plain and obvious error. Second, it appears that there is some misperception that, under Humphries, a conclusion that the government's error in failing to allege the terminal element was nonprejudicial may be based on the same flawed logic that we rejected in Fosler and Humphries. See United States v. Allbery, 44 M.J. 226, 228 (C.A.A.F. 1996).

Finding sufficient notice of the terminal element -- and thus no prejudice -- on such bases as: (1) witness testimony describing the act or failure to act that meets Article 134, UCMJ's, first element; (2) the government's identification of its theory of criminality during its closing argument; (3) evidence of defense counsel's general awareness of the terminal element; or (4) findings instructions that require the panel to find the terminal element beyond a reasonable doubt in order to convict, without more, is error under both Fosler and Humphries. That: (1) the evidence was legally sufficient to prove the terminal element; (2) defense counsel demonstrated a general

knowledge of the law, and (3) the government's theory of criminal liability was introduced during closing or through findings instructions do not answer the altogether different question whether the record sufficiently demonstrates that an accused was on notice as to which clause or clauses of the terminal element he needed to defend against. Humphries, 71 M.J. at 216 n.8. It is this latter question that determines whether an appellant was prejudiced.

In Humphries, we found prejudice where "[n]either the specification nor the record provide[d] notice of which terminal element or theory of criminality the Government pursued in th[at] case." Id. at 216.[7] Here, however, we find no prejudice because the record clearly demonstrates that Appellant (1) was put on notice that the Government intended to prove that his conduct was both prejudicial to good order and discipline and service discrediting and (2) defended himself against those theories of guilt.

In its opening statement, the Government stated that it would call First Sergeant (Sgt) Perkins, who would

---

[7] We noted that the government failed to (1) mention in its opening statement "how [a]ppellee's conduct satisfied either clause 1 or 2 of the terminal element," (2) "present any specific evidence or call a single witness to testify as to why [a]ppellee's conduct satisfied" the terminal element, or (3) make any "attempt to tie any of the evidence or witnesses that it did call to the Article 134, UCMJ," charge. Id.

"testify . . . that these videos and these actions are prejudicial to good order and discipline." During its case-in-chief, the Government presented the testimony of First Sgt Perkins, who testified that Appellant's conduct portrayed in the videotape was prejudicial to good order and discipline. On cross-examination, defense counsel challenged this testimony. On redirect examination, First Sgt Perkins then testified as to why the conduct was service discrediting. Again, this testimony was challenged by defense counsel on recross-examination.

Next, the Government presented the testimony of Sergeant First Class (SFC) Olivarez, who testified that Appellant's conduct was both prejudicial to good order and discipline and service discrediting. Defense counsel again challenged this testimony on cross-examination.

During closing argument, Appellant summed up his vigorous defense against the terminal element of Article 134, UCMJ, arguing that the evidence was legally insufficient to prove the charged offense because there was no evidence that the unidentified male and female in the recording knew that Appellant was a servicemember, and, therefore, the conduct could not (1) "bring[] a bad light on the military," or (2) "be bad [for] the unit" or undermine Appellant. Defense counsel argued that the Government failed in its attempt to prove the terminal

17

element through the testimony of First Sgt Perkins and SFC Olivarez.

The evidence, as contained in the trial record, demonstrates that Appellant was not only provided "notice of which terminal element or theory of criminality the Government pursued in this case," Humphries, 71 M.J. at 216, but vigorously defended against it.

IV.  DECISION

The decision of the United States Army Court of Criminal Appeals is affirmed.

United States v. Goings, No. 11-0547/AR

STUCKY, Judge (dissenting):

We granted review in this case to determine whether Lawrence v. Texas, 539 U.S. 558 (2003), and United States v. Marcum, 60 M.J. 198 (C.A.A.F. 2004), extend a zone of privacy to the indecent act of which Appellant was convicted, and whether the same indecent act specification fails to state an offense because it does not expressly allege or necessarily imply the terminal element of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2006). In my opinion, the record shows that Appellant's conduct falls within Lawrence's privacy interest, and that none of the factors listed in Lawrence or the military-specific factors suggested in Marcum disturb this privacy interest. I believe Appellant has carried his burden to establish plain error, and would hold that the conduct forming the basis of his conviction is constitutionally protected. Therefore, I need not reach the second issue.[1]

I.

Appellant's off-post home in Germany was searched pursuant to a German search warrant issued on unrelated charges. German police seized a camcorder and several video cassettes containing depictions of adults engaged in sexual activity from Appellant's

---

[1] If it were otherwise, I would agree with the majority that Appellant was not prejudiced by the failure to allege the terminal element.

home.  Appellant was not charged for many of the videos depicting sexual conduct between Appellant and various females.[2]

Based upon two of the videos, Appellant was charged with four specifications (Charge II, Specifications 4-7) of indecent acts in violation of Article 134, UCMJ.  Specifications 4-6 involved a video wherein Appellant and an unidentified man took turns filming each other engaging in consensual sexual activity with an unidentified female.[3]  Specification 7 involved a separate video wherein Appellant and a female German civilian

---

[2] The Government attempted to introduce some of the uncharged videos as Rule for Courts-Martial (R.C.M.) 404(b) motive or intent evidence of Appellant's desire to film "lustful acts" to support Specifications 4-6.  The military judge did not admit the videos as R.C.M. 404(b) evidence.

[3] SPECIFICATION 4:  In that [Appellant], did, at or near Leimen, Germany, between on or about 5 February 2003 and 1 February 2006, wrongfully commit an indecent act with another male and a female by being present, observing and video recording on a video cassette tape the other male and female engaging in sexual intercourse.

SPECIFICATION 5:  In that [Appellant], did, at or near Leimen, Germany, between on or about 5 February 2003 and 1 February 2006, wrongfully commit an indecent act with another male and a female by being present, observing and video recording on a video cassette tape the other male and female engaging in sexual intercourse.

SPECIFICATION 6:  In that [Appellant], did, at or near Leimen, Germany, between on or about 5 February 2003 and 1 February 2006, wrongfully commit an indecent act with another male and a female by allowing the other male to be present and video record on a video cassette tape the said [Appellant] engaging in sexual intercourse with the female.

2

engaged in sexual conduct.[4] Before trial, upon defense counsel's motion, the military judge severed and dismissed Specification 7. The military judge acquitted Appellant of Specifications 4 and 5, but convicted him of the specification at issue in this appeal -- Specification 6.

II.

Although Appellant's main theory at trial was that his conduct was neither prejudicial to good order and discipline nor service discrediting, he did refer to his conduct as "constitutionally protected activity" more than once.[5] However, I agree with the majority that plain error review is appropriate in this case as Appellant did not make a specific objection on Lawrence or Marcum grounds such that he clearly preserved the issue. I disagree with the majority's interpretation of Lawrence, and the conclusion that Appellant has not carried his burden to establish plain error. Appellant has pointed to

---

[4] SPECIFICATION 7: In that [Appellant], did, at or near Heidelberg, Germany, on or about 1 July 2007, wrongfully commit an indecent act with P.B. by video recording on a video cassette tape the naked genital area of P.B.

[5] At trial, Appellant referenced the protected status of his conduct in the civilian world, stating that "sexual intercourse in the presence of another person is not a crime outside of the military." Defense counsel also asked a witness "how is allowing yourself to be videotaped by a third party while you are having a [sic] constitutionally protected activity" prejudicial to good order and discipline?

particular facts in the record indicating that his conduct is constitutionally protected under Lawrence and Marcum.

A.

In Lawrence, the Supreme Court addressed the validity of a Texas anti-sodomy statute that made it a crime for "two persons of the same sex to engage in certain intimate sexual conduct." 539 U.S. at 562.  Citing earlier privacy precedents like Griswold v. Connecticut, 381 U.S. 479 (1965); Carey v. Population Servs. Int'l, 431 U.S. 678 (1977); and Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833 (1992), Justice Kennedy, speaking for the Court, reaffirmed the idea that there is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment.  Lawrence, 539 U.S. at 564–78.  The Court held that this liberty interest did, in fact, protect privacy rights involving "the most private human conduct, sexual behavior, and in the most private of places, the home."  Id. at 567.  The Court suggested some limits on this liberty interest, noting that Lawrence did not involve minors, persons who might be injured or coerced, persons situated in a relationship where consent might not easily be refused, public conduct, or prostitution.  Id. at 578.

Recognizing that constitutional rights may apply differently to members of the armed forces, Parker v. Levy, 417 U.S. 733, 759 (1974); see also United States v. Barberi, 71 M.J.

4

127, 131 (C.A.A.F. 2012), this Court modified the constitutional protections outlined in Lawrence. Marcum, 60 M.J. at 208. In Marcum, the appellant was convicted of non-forcible sodomy with a subordinate. 60 M.J. at 200. This Court held that despite Lawrence, Article 125, UCMJ, was constitutional as applied to Marcum. Id. at 205. To reach that conclusion, this Court applied a three-part test for addressing the application of Lawrence in the military context:

1. Was the conduct of a nature to bring it within the liberty interest identified by the Supreme Court?

2. Did the conduct encompass any behavior or factors identified by the Supreme Court as an exception to the liberty interest?

3. Are there additional military factors that affect the nature and reach of the Lawrence liberty interest?

Id. at 206-07. This Court found that Marcum's conduct was of a nature to bring it within the Lawrence liberty interest because it involved private, consensual sexual activity between adults, but held that an applicable Air Force instruction and the nature of superior-subordinate relationships took his conduct outside of the Lawrence liberty interest. Id. at 207-08. Because a subordinate within the appellant's chain of command is a person "'who might be coerced'" or is "'situated in [a] relationship[] where consent might not easily be refused,'" this Court decided the case on the second part of the test and did not discuss what

5

the additional military factors contemplated in part three might entail.  Id. at 208 (alteration in original) (quoting Lawrence, 539 U.S. at 578).

B.

As a threshold matter, I agree that Appellant's rights as a military member are not coextensive with those enjoyed by civilians.  Parker, 417 U.S. at 758–59; Marcum, 60 M.J. at 205. Furthermore, I agree that Lawrence does not protect all sexual conduct, but the majority mischaracterizes the reach of Lawrence.  Contrary to what the majority suggests, Lawrence does not turn on interpretations of "indecency," the type of sexual activity adults decide to engage in, or the presence of only two consenting adults.  United States v. Goings, ___ M.J. ___ (9–12) (C.A.A.F. 2013).

Rather, as evidenced throughout the opinion, Lawrence turned on the freedom of adults to engage in "private conduct in the exercise of their liberty under the Due Process Clause," "the right to make certain decisions regarding sexual conduct . . . beyond the marital relationship," and the "emerging awareness that liberty gives substantial protection to adult persons in deciding how to conduct their private lives in matters pertaining to sex."  Lawrence, 539 U.S. at 564, 565, 572.

The majority relies on pre-Lawrence and Marcum determinations of what constitutes "indecent" conduct and what can be considered prejudicial to good order and discipline or service discrediting conduct to: (1) find that the military judge correctly found that the facts were legally sufficient to uphold a conviction for indecent acts; and (2) hold that "the military judge did not commit error, let alone plain and obvious error, in failing to sua sponte raise a Lawrence issue." Goings, ___ M.J. at ___ (11-12). However, whether the facts are legally sufficient to sustain a conviction, whether the military judge failed to sua sponte raise a Lawrence issue, or whether Congress and the President may proscribe certain types of indecent conduct are not the issues before this Court. We are tasked with determining, de novo, whether Appellant has carried his burden to establish that Lawrence extends a zone of protection to his conduct -- regardless of whether the Manual for Courts-Martial, United States (MCM) considers it indecent. Therefore, it is necessary to consider what is required to establish plain error, and the effect of Lawrence on what may have previously been considered constitutional legislation and judicial precedents.

### III.

Under a plain error analysis, this Court has held that the "Appellant has the burden of demonstrating that: (1) there was

error; (2) the error was plain or obvious; and (3) the error

materially prejudiced a substantial right of the accused."

United States v. Wilkins, 71 M.J. 410, 412 (C.A.A.F. 2012)

(citation and internal quotation marks omitted).[6]  Under Lawrence

and Marcum, which were both decided before Appellant's court-

martial, to establish error all Appellant must show is that his

conduct was:  (1) private consensual sexual activity between

adults, (2) that does not fall outside of the Lawrence liberty

interest, and (3) is not affected by additional military

factors.  Lawrence, 539 U.S. at 578; Marcum, 60 M.J. at 206-07.

If Appellant establishes that his conduct is protected, that

nothing takes it outside of the liberty interest, and that no

unique military factors affect the liberty interest, then

Appellant has established that he was convicted of

constitutionally protected conduct which is plain and obvious

---

[6] The Supreme Court's plain error doctrine contains a fourth prong -- "if the above three prongs are satisfied, the court of appeals has the discretion to remedy the error -- discretion which ought to be exercised only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Puckett v. United States, 556 U.S. 129, 135 (2009) (alteration in original) (citation and internal quotation marks omitted).  I have long maintained that this Court should apply the fourth prong in line with the Supreme Court's plain error analysis.  See United States v. Humphries, 71 M.J. 209, 221 (C.A.A.F. 2012) (Stucky, J., dissenting); United States v. Tunstall, ___ M.J. ___ (2) (C.A.A.F. 2013) (Stucky, J., concurring in part and in the result).  However, applying the fourth prong to this case would not change the outcome as a conviction for constitutionally protected conduct is both prejudicial and clearly affects the fairness and integrity of judicial proceedings.

error that materially prejudices his substantial rights. Article 59(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 859(a) (2006); see also United States v. Knowles, 29 F.3d 947, 951 (5th Cir. 1994) ("basing a conviction on an unconstitutional statute is both 'plain' and 'error'").

A.

The video at issue depicts private consensual sexual activity between adults. The Government did not allege that the individuals in the video were minors, and it is apparent from the video that they were not. The Government also conceded that there was no evidence of coercion or lack of consent, and that the video shows that the participants consented to the activity.

The acts were also "private" under the Supreme Court's conception of privacy under the Fourteenth Amendment.[7] Lawrence contemplates that the term "private" encompasses: (1) the location of the acts; and (2) the personal decisions that each consenting adult makes regarding his own sexual conduct.[8]

---

[7] The Fourteenth Amendment's zone of "privacy" is the basis for the liberty interest and is distinct from "public conduct" that falls outside of the Lawrence liberty interest. Lawrence, 539 U.S. at 578. For example, Fourteenth Amendment "privacy" protects an individual's right to engage in consensual sexual activity in his home, but, under Lawrence, the same activity is not protected in a public park because it would be "public conduct." Whether Appellant's conduct can be considered "public conduct" is discussed below.

[8] This conception is echoed in other Supreme Court privacy precedent. See, e.g., Griswold, 381 U.S. at 484-85 (discussing

_Lawrence_, 539 U.S. at 567 ("the most private human conduct, sexual behavior . . . in the most private of places, the home. . . . adults may choose to enter upon this relationship in the confines of their homes and their own private lives"). The record establishes that the video was filmed consensually, by adults, in a private place -- Appellant's home. I would hold that Appellant's acts are of a nature to bring them under the _Lawrence_ liberty interest.

### B.

The next question is whether Appellant's conduct somehow falls out of the liberty interest. _Lawrence_, 539 U.S. at 578. The record establishes this case does not involve any of the conditions expressly listed in _Lawrence_ that the Supreme Court suggested would take Appellant's conduct out of the liberty interest. Appellant's conduct did not involve injury to a person, abuse of an institution the law protects, minors, injured or coerced persons, persons in a situation where consent might not be easily refused, or prostitution.[9] _Id._ at 567, 578.

---

the application of various zones of privacy to the home); _Carey_, 431 U.S. at 684 ("[O]ne aspect of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment is 'a right of personal privacy, or a guarantee of certain areas or zones of privacy.' This right of personal privacy includes 'the interest in independence in making certain kinds of important decisions.'") (citations omitted).

[9] "Public conduct" is also expressly listed as a factor that may remove conduct from the liberty interest. _Lawrence_, 539 U.S. at

However, the majority holds that "permitting a third-party to observe and memorialize one's sexual activity on videotape" is outside of the Lawrence liberty interest -- apparently because it was not "wholly private,"[10] it was "open and notorious" and therefore indecent, because "the trier of fact has deemed the conduct to be prejudicial to good order and discipline in the armed forces and service discrediting," or some combination of the three.  Goings, ___ M.J. at ___ (9–12).

The problem with this holding is that a military judge's determination that Appellant's conduct is legally sufficient to sustain a conviction for indecent acts under Article 134, UCMJ, cannot be used to determine whether Appellant's conduct is constitutionally protected, given the differing natures of the two inquiries.[11]  Compare Jackson v. Virginia, 433 U.S. 308, 319 (1979) ("the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any

---

578.  Whether Appellant's conduct was "public" is discussed below.

[10] The majority suggests that Appellant's conduct must be wholly private, Goings, ___ M.J. at ___ (11), but it is unclear whether this is something beyond Lawrence's conception of privacy as neither Lawrence nor Marcum contains that phrase.

[11] While legal sufficiency is not an appropriate metric to determine constitutionality, I recognize that the reverse is not necessarily true.  In other words, the constitutionally protected status of conduct may affect legal sufficiency, but not vice versa.  See United States v. Wilcox, 66 M.J. 442 (C.A.A.F. 2008).

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"), with Lawrence, 539 U.S. at 563-64 ("The question before the Court is the validity of a Texas statute . . . . We conclude the case should be resolved by determining whether the petitioners were free as adults to engage in the private conduct in the exercise of their liberty under the Due Process Clause of the Fourteenth Amendment . . . ."). This is especially true where the law has recently changed and we are evaluating the constitutionality of an as applied challenge to a statute as a matter of first impression.[12] In this case, it does not matter that Congress, the President, and military courts have previously indicated that conduct like Appellant's was legally sufficient to sustain a conviction; what matters is whether Appellant has established that his conduct is constitutionally protected under the current state of the law. He has.

Appellant was convicted of an indecent act which requires: (1) that the accused committed a wrongful act; (2) that was indecent; and (3) under the circumstances was prejudicial to good order and discipline or service discrediting. MCM pt. IV,

---

[12] Indeed, the majority recognizes this point early in the opinion. Goings, ___ M.J. at ___ (7 n.3) ("What amounts to an argument that the Government has not put forth legally sufficient evidence to support an Article 134, UCMJ, conviction is fundamentally different from a constitutional argument that, in the military context, Appellant's conduct is protected.").

para. 90.b. (2005 ed.). "Indecent" is defined as "that form of immorality relating to sexual impurity which is not only grossly vulgar, obscene, and repugnant to common propriety, but tends to excite lust and deprave the morals with respect to sexual relations." Id. at para. 90.c.

Before Lawrence, this Court's predecessor held that "open and notorious" fornication is indecent. See United States v. Berry, 6 C.M.A. 609, 614, 20 C.M.R. 325, 330 (1956) (finding indecency where the accused and a fellow servicemember simultaneously had sex with different women in the same hotel room and switched women the next morning). Since Berry, this Court has applied the "open and notorious" standard to find violations of indecent acts under Article 134. See, e.g., United States v. Izquierdo, 51 M.J. 421, 423 (C.A.A.F. 1999) (finding indecency where the accused had sexual intercourse in his barracks room where his two roommates were sleeping). The majority relies upon these cases to argue that Appellant's conduct is "open and notorious" and therefore "indecent" and prejudicial to good order and discipline or service discrediting. Goings, ___ at ___ (6-9). It ignores any effect that Lawrence may have had on Berry's "open and notorious" standard for indecency, and seems to hold that either the presence of a third person during sexual activity, or the act of videotaping sexual activity, even for private use, equals

13

"public conduct" under Lawrence, or provides a separate basis to take Appellant's conduct outside of Lawrence.

I do not believe that Berry remains good law after Lawrence, at least to the extent that it categorically forbids "open and notorious" private, consensual, sexual conduct without any connection to the military other than the accused being a member of the military.[13]  I am also convinced that whatever "public conduct" means under Lawrence, it does not include adults consensually engaging in sexual activity inside a home. Furthermore, recognizing that the list of unprotected conduct in Lawrence is non-exclusive, I can find no support for the majority's suggestion that either the involvement of a third person, privately videotaping consensual sexual activity, or the combination of the two brings Appellant outside of the liberty interest.[14]

---

[13] Even if part of Berry somehow survives Lawrence, it is not dispositive in this case, as Berry and its progeny are distinguishable.  In those cases, the acts in question were all somehow connected to other military personnel, military duties, or military locations.

[14] The only cases I can find which address Lawrence in the context of group sexual encounters or videos involve minors and are therefore already constitutionally unprotected.  See, e.g., People v. Allen, No. A106272, 2005 Cal. App. Unpub. LEXIS 2135, 2005 WL 552470 (Cal. App. 1st Dist. Mar. 9, 2005); United States v. Machado, No. ACM 35908, 2006 CCA LEXIS 132, 2006 WL 1512106 (A.F. Ct. Crim. App. May 31, 2006).  It does not appear that civilian jurisdictions have seen fit to charge or convict adults of such private, consensual conduct after Lawrence.  Indeed, the only other cases the majority cites to show that Lawrence does

United States v. Goings, No. 11-0547/AR

Lawrence discusses sexual activity between two persons but does not limit the liberty interest to such activity.[15]  Rather, it describes the liberty interest as a personal decision that consenting adults may make.  539 U.S. at 564, 567, 570, 572.  It is not appropriate or feasible for this or any court to determine whether to countenance certain types of consensual relationships or conduct, absent harm to persons or to an institution the law protects, or without a clear connection to the military as discussed below.  Indeed, Lawrence expressly counsels against such determinations.  Id. at 567 ("[The liberty interest], as a general rule, should counsel against attempts by the State, or a court, to define the meaning of the relationship or to set its boundaries absent injury to a person or abuse of an institution the law protects.").

Similarly, nothing in Lawrence indicates that private videotaping of sexual activity is unprotected.  This is

not protect all sexual activity involve child pornography or nonconsensual photography of sexual activities.  Goings, ___ M.J. at ___ (9–10, 11) (citing United States v. Lebowitz, 676 F.3d 1000, 1012 n.5 (11th Cir. 2012); United States v. Cohen, 63 M.J. 45 (C.A.A.F. 2006)).  I doubt that the dearth of such cases indicates that no consenting adults are engaging in such activities.

[15] If Lawrence only intended to protect the right of two homosexuals in a defined personal relationship to engage in certain sexual conduct it could have been decided on equal protection grounds -- something the Court expressly refused to do.  539 U.S. at 574–75.

15

especially true where the videotapes were filmed in a home for private use only.[16]  There is nothing in the record to indicate that the video was intended to be anything but for private use, or that Appellant had a commercial intent in filming the video. The record establishes that the video was created years before it was found in Appellant's home, and that Appellant neither distributed the video nor even converted it to a medium which would make distribution feasible.  At trial, defense counsel referred to it as a private video, the Government did not contest defense counsel's characterization of the video as private, and members of Appellant's unit testified that nobody had seen it or knew about it.  Furthermore, the Government introduced no evidence of commercial intent or distribution, and even admitted in closing argument that there was no evidence that Appellant had shown anybody the videos.

---

[16] I agree with the majority that in some cases videotaping sexual activity may have bearing on whether the conduct is "public" or nonconsensual such that conduct may not be protected by Lawrence.  But such a factor is not relevant where, as here, it is clear that all parties consented to the videotaping, it was done in a private location, and there is no evidence the tapes were distributed.  Nonconsensual distribution after a video was made consensually is a separate matter.  To this end, nearly every jurisdiction, including the military, has made nonconsensual distribution a separate offense.  See Article 120c(a), UCMJ, 10 U.S.C. § 920c(a) (2012).

Additionally, there is no law indicating that recording sexual acts is a punishable offense under Article 134, UCMJ.[17] As noted above, aside from limited exceptions, it is not the province of this Court to determine what types of private sexual activities are appropriate. See Lawrence, 539 U.S. at 571 ("Our obligation is to define the liberty of all, not to mandate our own moral code.") (citations and internal quotation marks omitted). Therefore, I would find that the record establishes that nothing takes the sexual activity outside of Lawrence in this case.

C.

Finding that Appellant's actions are of a nature to bring them within Lawrence, and that nothing exists that takes them outside of that liberty interest, the next inquiry is whether

---

[17] This is supported by the fact Appellant was not charged for a number of videos found in his house depicting sexual conduct, and the fact the military judge saw fit to acquit him of two specifications involving videotaping of sexual conduct. Furthermore, the 2008 MCM expanded the definition of indecent conduct to include observing or making sexually related images or videos without the other person's consent and contrary to their reasonable expectation of privacy, but did not criminalize consensual recording. See Article 120(t)(12), UCMJ, 10 U.S.C. § 920(t)(12) (repealed 2011) (emphasis added). Similarly, the 2012 MCM did not criminalize consensual recording. Article 120c(a), UCMJ, 10 U.S.C. § 920c(a) (2012). There is military case law suggesting that photographing or filming sexual acts is punishable under Article 134, UCMJ. See, e.g., Cohen, 63 M.J. at 53. However, all of the cases involve lack of consent, surreptitious recording, or underage participants and are thus clearly distinguishable from this case.

17

the circumstances of this case trigger the military-specific factors envisioned by Marcum.[18]

The record establishes that there is no evidence that the unidentified participants were in the military, connected to the military, knew Appellant was in the military, or that anybody in the military knew about the video. Defense counsel elicited testimony from a member of Appellant's unit that there was no indication that another military member was involved in the video, and that no military members knew about the video. Additionally, defense counsel submitted that the other male in the video was not in the service based upon his appearance, and pointed out that the Government had not presented any evidence indicating that the unidentified participants were in the military, or knew that the accused was in the military. The Government did not respond or attempt to introduce any such evidence beyond suggesting that the video was connected to the military because Appellant is in the military. Appellant's status as a military member alone is insufficient to fulfill the third prong of Marcum and foreclose constitutional protection.

---

[18] The third prong of Marcum asks if there are additional military factors that affect the nature and reach of the Lawrence liberty interest. 60 M.J. at 207. This Court has not squarely addressed what type of military factors or connections would be sufficient to take conduct outside of the liberty interest, or whether these factors encompass anything beyond conduct or situations that are already covered by first and second prongs of Lawrence.

Otherwise, Lawrence would be a dead letter as regards the military.

The majority suggests that "Congress' and the President's determination to proscribe such acts that are 'to the prejudice of good order and discipline' or 'of a nature to bring discredit upon the armed forces,' . . . no doubt furthers the military's unique interest in obedience and discipline . . . ." Goings, ___ M.J. at ___ (10) (citations omitted). I agree that if the third prong of Marcum means anything beyond the second prong, it is something akin to the terminal elements of Article 134, UCMJ -- i.e., the legitimate interest in protecting the command and discipline capabilities of the military and protecting the reputation of the military. However, where the record establishes no military connection at all, much less a connection to command or disciplinary function, a servicemember's constitutional rights should not be determined based on attenuated reputational concerns. Our First Amendment jurisprudence supports this holding:

> Article 134, UCMJ, does not make every "irregular or improper act" a court-martial offense and does not reach conduct that is only indirectly or remotely prejudicial to good order and discipline. MCM pt. IV, para. 60.c.(2)(a); see also William Winthrop, Military Law and Precedents 723-24 (2d ed. 1920 reprint) (commenting on Article 62 of the American Articles of War, the predecessor to Article 134, UCMJ, and stating that to be punishable, acts prejudicial to good order and discipline "must have been committed under such circumstances as to have directly offended against the

19

> government and discipline of the military state"). If it were otherwise, the forces of narrowing interpretation that saved Article 134, UCMJ, from constitutional challenge in Parker v. Levy would fail.

Wilcox, 66 M.J. at 447. The Fourteenth Amendment privacy interest here is directly analogous to the First Amendment free speech interests in Wilcox and this Court should require a similar connection to the military to trigger the third prong of Marcum -- a direct and palpable connection between the conduct and the military mission or military environment.[19] Id. at 448. Appellant has established there was no direct and palpable connection between his conduct and the military mission or military environment. Therefore there is no "additional factor[] relevant solely in the military environment that affect[s] the nature and reach of the Lawrence liberty interest." Marcum, 60 M.J. at 206. Appellant's conduct is constitutionally protected.[20]

---

[19] Wilcox analyzed the legal sufficiency of an Article 134, UCMJ, conviction for service discrediting speech; whereas this case is addressing the constitutionality of a statute as applied. 66 M.J. at 448. As noted above, these are two separate inquiries. However, it does not seem logical to require a more exacting standard -- direct and palpable connection to the military -- in the context of legal sufficiency, which is a very low threshold for the Government to meet, but not require the same standard in the context of determining constitutional rights. See United States v. Dobson, 63 M.J. 1, 21 (C.A.A.F. 2006) (recognizing the low bar to establish legal sufficiency).

[20] This does not conflict with our holding in United States v. Phillips, 70 M.J. 161, 163 (C.A.A.F. 2011). Phillips analyzed what is legally sufficient to establish the terminal element of

IV.

The record establishes that Appellant's conduct was private consensual activity between adults, that did not fall outside of the Lawrence liberty interest, and was not affected by additional military factors. Therefore, Appellant has established he was convicted of constitutionally protected conduct -- a plain and obvious error which materially prejudices his substantial rights. I cannot think of a more compelling demonstration that Appellant's interests "overcome Congress' and the President's determinations that his conduct be proscribed." Goings, ___ M.J. at ___ (8); see also United States v. Stephens, 67 M.J. 233, 235 (C.A.A.F. 2009) ("Of course, a rule or other provision of the Manual for Courts-Martial cannot sanction a violation of Appellant's constitutional rights."); United States v. Lopez, 35 M.J. 35, 39 (C.M.A. 1992) (recognizing that the military, like the federal and state systems, has hierarchical sources of rights, and that the highest source is the Constitution of the United States). I would reverse Appellant's conviction as to the indecent acts charge.

---

Article 134, UCMJ, in a child pornography prosecution. This is not a legal sufficiency case, it is a case analyzing the constitutionality of a statute, and child pornography stands upon a different constitutional basis. In any event, Phillips recognized that constitutionally protected conduct may be different even in the context of analyzing legal sufficiency. Id. at 166.